UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JANE DOE, by her parents and guardian SABRA SMITH and MARK SMITH,<br><br>    Plaintiffs,<br><br>    v.<br><br>JOHN SOBECK, CYNTHIA BROSKIE and THE H GROUP BBT, INC.,<br><br>    Defendants. | Case No. 12-cv-1222-JPG-DGW |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendants John Sobeck, Cynthia Broskie and the H Group BBT, Inc. ("the H Group") (Doc. 15). Jane Doe, by her mother and guardian Sabra Smith ("Sabra") and by her father Mark Smith, has responded to the motion (Doc. 19), and the defendants have replied to that response (Doc. 23).

**I.      Standard for Dismissal**

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556).

In *Bell Atlantic*, the Supreme Court rejected the more expansive interpretation of Rule 8(a)(2) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *Bell Atlantic*, 550 U.S. at 561–63; *Concentra Health Servs.*, 496 F.3d at 777. Now "it is not enough for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.'" *Concentra Health Servs.*, 496 F.3d at 777 (quoting *Bell Atl.*, 550 U.S. at 555).

Nevertheless, *Bell Atlantic* did not do away with the liberal federal notice pleading standard. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). A complaint still need not contain detailed factual allegations, *Bell Atl.*, 550 U.S. at 555, and it remains true that "[a]ny district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain . . .' should stop and think: What rule of law *requires* a complaint to contain that allegation?" *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) (emphasis in original). Nevertheless, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl.*, 550 U.S. at 555. If the factual detail of a complaint is "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8," it is subject to dismissal. *Airborne Beepers*, 499 F.3d at 667.

II.   **Alleged Facts**

The allegations in the complaint establish the following relevant facts.

Doe was a 24-year-old[1] developmentally disabled and mentally incompetent adult. Because of her disability, she was of small stature, had diminished strength and endurance, possessed the functional capacity of an 8-year-old, and lacked the capacity for complex decision-making or risk-recognition.

Doe participated in a developmental training program operated by the H Group. The H Group received federal funds to support its developmental training efforts. Sobeck worked for the H Group as a vocational evaluator, served as Doe's case manager, and was responsible for supervising and educating Doe and others regarding job and independent living skills. Broskie, also an H Group employee, was responsible for supervising and educating Doe and others regarding vocational skills.

In March 2010, Sabra, Doe's mother but not yet her legal guardian, became concerned that L.T., a developmentally disabled male H Group program participant, was giving Doe inappropriate attention by giving her gifts. L.T. was larger and older than Doe. Sabra told Sobeck she was concerned about L.T.'s attention to Doe and was concerned that, because of her disability, Doe was unable to appreciate risks from others and was therefore vulnerable to men with bad intentions. Sabra asked Sobeck to place Doe and L.T. in different work areas or give them staggered lunch breaks to keep them apart. Sobeck did not separate Doe and L.T.

Later that same month, Sabra informed Sobeck that L.T. had made sexual advances and sexual remarks to another girl on Doe's bus and asked Sobeck to protect Doe from L.T. Sobeck did nothing in response to Sabra's information.

Sabra continued to contact Sobeck every few days throughout March and early April 2010 about L.T.'s contacts with Doe, including giving her gifts, discussing sexually explicit things, and

---

[1] The complaint, filed in 2012, alleges that Doe is 26 years old. The events recounted in the complaint occurred two years earlier, so the Court presumes Doe was 24 years old at the time.

trying to convince her that her parents were her enemies. Sobeck told Sabra the interactions were innocent and assured Sabra that nothing would happen to Doe because she and L.T. were supervised.

During that same time period, Sabra complained to Broskie multiple times about L.T.'s interactions with Doe. Broskie told Sabra the H Group was doing everything it could to keep Doe safe.

Despite Sobeck's and Broskie's assurances, on April 7, 2013, the Smiths removed Doe from the H Group's program because they thought the defendants were not doing enough to protect Doe from L.T., who they believed posed a danger to Doe. After Sobeck assured Sabra that he had talked to L.T. about appropriate personal boundaries and had told L.T. not to have any relationship or interaction with Doe other than working together, the Smiths decided to send Doe back to the program.

After Doe returned on May 3, 2010, the Smiths became concerned again because L.T.'s behavior had not changed. Sabra spoke with both Sobeck and Broskie about these concerns. Specifically, on May 13, 2010, Sobeck assured her L.T. was being a gentlemen and that nothing would happen because Doe was being watched closely.

In reality, on May 13, 2010, L.T. took Doe to the bathroom with him, kissed her, and asked her to touch his genitals. Doe refused. The incident was not reported to the Smiths.

The following day, L.T. again took Doe into the bathroom and, this time, raped her. The Smiths again withdrew Doe from the H Group's program.

On November 30, 2012, after Sabra was appointed Doe's legal guardian, the Smiths filed this lawsuit alleging four causes of action: a claim against the H Group under § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), for discrimination on the basis of disability (Count I); a claim against the H Group under Title IX of the federal Education Amendments Act of 1972, 20

U.S.C. § 1681 (Count II); a claim against all defendants under the Illinois Gender Violence Act ("IGVA"), 740 ILCS 82 (Count III); and a claim against all defendants for common law negligence (Count IV).

The defendants ask the Court to dismiss Count I because the plaintiffs have not alleged discrimination solely on the basis of disability or that the defendants acted in bad faith or with gross misjudgment. They ask the Court to dismiss the H Group from Count III because the IGVA does not create liability for corporate entities and to dismiss Sobeck and Broskie because the plaintiffs have not alleged they encouraged or assisted L.T.'s gender-related violence. Finally, they ask the Court to dismiss the remaining claims for failure to comply with the pleading requirements of Federal Rule of Civil Procedure 8(d)(1).

### III.  Analysis

#### A.  Rehabilitation Act

Section 504 of the Rehabilitation Act prohibits federal grant recipients from discriminating against a disabled individual solely on the basis of the disability. *Mallett v. Wisconsin Div. of Voc. Rehab.*, 130 F.3d 1245, 1257 (7th Cir. 1997). The act states, in pertinent part:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . .

29 U.S.C. § 794(a). To succeed on a Rehabilitation Act claim, a plaintiff must prove four elements: (1) she is disabled, (2) she is otherwise qualified for participation in the program, (3) the program received federal financial assistance, and (4) she was denied the benefits of the program solely because of her disability. *Mallett*, 130 F.3d at 1257.

Some courts have also required a plaintiff to show that the discrimination reflected bad faith or gross misjudgment. *See M.Y. v. Special Sch. Dist. No. 1*, 544 F.3d 885, 888 (8th Cir.

5

2008) (education context); *G.C. v. Owensboro Pub. Sch.*, No. 11-6476, 2013 WL 1235592, at *10 (6th Cir. Mar. 28, 2013); *Stewart v. Waco Indep. Sch. Dist.*, No. 11-51067, 2013 WL 1091654, at *3 (5th Cir. Mar. 14, 2013). This intent or state of mind is reflected by conduct that "depart[s] substantially from 'accepted professional judgment, practice or standards as to demonstrate that the person[s] responsible actually did not base the decision on such a judgment.'" *M.Y.*, 544 F.3d at 889-90 (quoting *Monahan v. Nebraska*, 687 F.2d 1164, 1170-71 (8th Cir. 1982)). Courts that add this intent requirement do so because they believe "that in limiting liability to discrimination 'solely by reason of . . . [disability],' Congress did not intend to create general tort liability for reasonable decisions made by professionals in the educational context." *Id.* at 890.

The defendants assert the plaintiffs have not adequately pled the fourth element – denial of program benefits solely because of disability – and the bad faith/gross misjudgment requirement.

On the other side, the plaintiffs argue that they have sufficiently pled disability discrimination by alleging the failure to provide an appropriate accommodation for Doe's disability. They further dispute that there is a bad faith or gross misjudgment requirement in a Rehabilitation Act case like the one at bar. First, they note, the United States Court of Appeals for the Seventh Circuit has not adopted such a requirement, *see Brown v. Dist. 299 – Chi. Pub. Schs.*, 762 F. Supp. 2d 1076, 1085 n.8 (N.D. Ill. 2010), and even if the requirement exists, it is limited to the education context in which a plaintiff challenges a school's provision of a free appropriate public education as required by the Individuals With Disabilities in Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*

The Court first addresses whether the plaintiffs have pled discrimination solely by reason of disability, then turns to whether it is necessary to plead bad faith or gross misjudgment.

   1.  Discrimination Solely by Reason of Disability

Discrimination under the Rehabilitation Act can be established if a defendant (1)

intentionally acted on the basis of the disability, (2) refused to provide a reasonable modification to permit access to the program, or (3) enforced rules that disproportionally impacted disabled people. *Washington v. Indiana. High Sch. Athletic Ass'n*, 181 F.3d 840, 847 (7th Cir. 1999) (interpreting identical language under the Americans with Disabilities Act, 42 U.S.C. § 12132).

The defendants are correct that Doe has not alleged any facts plausibly suggesting that the defendants intentionally acted on the basis of her disability. No allegations plausibly suggest the H Group responded to Sabra's complaints the way it did and failed to implement the protective measures she requested solely because of Doe's disability. Nor does any allegation suggest L.T.'s treatment of Doe was based on her disability, as opposed to her sex, such that it could be construed as peer-on-peer disability discrimination or harassment. Thus, the complaint does not plausibly suggest the H Group fostered a hostile environment for disabled people like Doe. Neither has Doe alleged that the defendants enforced rules that disproportionately impacted disabled people like Doe.

The Court believes, however, that the plaintiffs have adequately pled disability discrimination under the second theory – a failure to accommodate Doe's disability. It is true that the Rehabilitation Act does not contain an express accommodation requirement. However, in *Alexander v. Choate*, 469 U.S. 287 (1985), the Supreme Court held the Rehabilitation Act's guarantee of meaningful access to programs may require defendants to make reasonable accommodations of an individual's disability in order to ensure such access to the benefit offered by the program. *Id.* at 299-301 (citing *Southeastern Cmty. Coll. v. Davis,* 442 U.S. 397 (1979)); *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 747 (7th Cir. 2006); *Washington*, 181 F.3d at 847-48. The program must be reasonably modified, however, only "if such a modification is *necessary* to ensure that the disabled have equal access to the benefits of that program." *Wisconsin Cmty. Servs.,* 465 F.3d at 748 (emphasis added). The Rehabilitation Act

7

helps disabled individuals who would have trouble accessing the program benefits *because of their disability*, not for some other reason. *Id.* This is reflected in the plaintiff's burden to show that, but for the disability, the disabled person would not have been excluded from the program. *Washington*, 181 F.3d at 849.

In this case, the plaintiffs have pled facts to support the notion that in order to have meaningful access to the H Group's program, it was necessary to maintain a safe place for participants where they would not be victimized by other participants. For those without Doe's disabilities (and thus the relevant comparison group for the disability discrimination inquiry), the H Group's standard supervision practices may have sufficed to provide such an environment. However, the plaintiffs have pled that Doe's disabilities rendered her particularly vulnerable and in need of additional supervision to keep her safe from peer-on-peer sexual harassment while at the H Group facility. The allegations establish that Doe's particular vulnerabilities caused by her disability prevented her from being able to safely access the H Group's program, and additional safety measures were necessary to provide her meaningful access.[2] The facts pled plausibly suggest the physical separation of L.T. from Doe that Sabra requested was an appropriate and reasonable accommodation to provide Doe the safety she required. It appears that the plaintiffs will be able to show that, but for Doe's disability rendering her vulnerable to sexual harassment, she would have been able to safely participate in the H Group's program. The Court believes this is sufficient to plead discrimination by reason of disability under the accommodation requirements of the Rehabilitation Act.

---

[2] The H Group's suggestion that Doe was unable to access the program and left of her or her parents' own free will and not because of anything the H Group did is disingenuous. The allegations establish that Doe left the program because the environment there did not protect her from rape. She should not be expected to tolerate rape or any other form of sexual harassment as a condition of participation in the H Group's program.

2. Bad Faith or Gross Misjudgment

The H Group argues that the plaintiffs must allege facts plausibly suggesting bad faith or gross misjudgment. However, the cases they cite in support of this requirement, *see, e.g., M.Y. v. Special Sch. Dist. No. 1*, 544 F.3d 885 (8th Cir. 2008); *Monahan v. Nebraska*, 687 F.2d 1164 (8th Cir. 1982); *Sellers v. School Bd. of City of Manassas, Va.*, 141 F.3d 524 (4th Cir. 1998); *Beth B. v. Van Clay*, 211 F. Supp. 2d 1020 (N.D. Ill. 2001), *aff'd*, 282 F.3d 493 (7th Cir. 2002), are all in the context of whether a school violates the Rehabilitation Act by failing to meet the requirement of the IDEA (or its predecessor, the Education for All Handicapped Children Act) to provide a free appropriate public education. In fact, those cases expressly state the bad faith and gross misjudgment requirement as applicable "in the context of education of handicapped children." *M.Y.*, 544 F.3d at 889; *accord Monahan*, 687 F.2d at 1171. The additional element is required in the educational context to distinguish an IDEA violation for failing to provide a free appropriate public education, which does not require bad faith or gross misjudgment, from a Rehabilitation Act violation for the same failure, which has the requirement. *Sellers*, 141 F.3d at 529 (citing *Monahan*, 687 F.2d at 1170-71); *Tammy S. v. Reedsburg Sch. Dist.,* 302 F. Supp. 2d 959, 982 (W.D. Wis. 2003). The H Group has cited no cases requiring bad faith or gross misjudgment in any other context, and the Rehabilitation Act cases they cite involving other contexts do not mention such a requirement. *See, e.g., Sandison v. Michigan High Sch. Athletic Ass'n*, 64 F.3d 1026 (6th Cir. 1995). Indeed, the Court has not found mention of the requirement in cases outside that context like *Washington v. Indiana High School Athletic Association*, 181 F.3d 840 (7th Cir. 1999) or *Wisconsin Community Services v. City of Milwaukee*, 465 F.3d 737 (7th Cir. 2006). This leads the Court to conclude that there is no bad faith or gross misjudgment requirement in this case.

In the absence of further briefing from the parties, the Court is not willing to speculate about the applicable mental state requirement other than to say that the law is clear the

Rehabilitation Act is not limited to intentional discrimination. *See Washington*, 181 F.3d at 846-47 (citing *Alexander v. Choate*, 469 U.S. 287, 295-97 (1985)). In a reasonable accommodation case, the Seventh Circuit Court of Appeals has stated, "The statute simply requires that the plaintiffs establish that the defendant's refusal to grant [the program modification requested] was a failure to make a reasonable accommodation." *Washington*, 181 F.3d at 848. What this means will certainly be fleshed out later in this litigation.

For these reason, the Court cannot say the plaintiffs have failed to adequately plead a cause of action under the Rehabilitation Act. Therefore, it will deny the motion to dismiss as it relates to Count I.

    B.    <u>Illinois Gender Violence Act</u>

The IGVA provides, in pertinent part,

> Any person who has been subjected to gender-related violence as defined in Section 5 may bring a civil action for damages, injunctive relief, or other appropriate relief against a person or persons perpetrating that gender-related violence. For purposes of this Section, "perpetrating" means either personally committing the gender-related violence or personally encouraging or assisting the act or acts of gender-related violence.

740 ILCS 82/10. Gender-related violence includes "[o]ne or more acts of violence or physical aggression satisfying the elements of battery under the laws of Illinois that are committed, at least in part, on the basis of a person's sex," and "[a] physical intrusion or physical invasion of a sexual nature under coercive conditions satisfying the elements of battery under the laws of Illinois." 740 ILCS 82/5.

    1.    <u>The H Group</u>

The H Group essentially concedes that L.T.'s alleged acts constitute gender-related violence. Instead, it argues that the plaintiffs have not pled a cause of action against it because only individual people, not corporate entities, can be liable under the IGVA. In support, it cites

10

*Fleming v. Fireside West, LLC*, No. 12 C 1436, 2012 WL 6604642, *3 (N.D. Ill. Dec. 18, 2012), in which a District Court for the Northern District of Illinois opined that the Illinois Supreme Court, which has not addressed the issue, would find corporations not subject to liability under the IGVA. It reasoned that the statute refers to "personally" performing acts, and a corporation does not "personally" perform anything but rather acts through its agents. *Id.* It further notes that the plain and ordinary meaning of the word "person" is "an individual human being" and that the Illinois legislature did not more broadly define the term in the IGVA as it had done in other laws. *Id.* The District Court came to this conclusion despite the Illinois Statute on Statutes, which provides that the term "person" may include corporate entities. *Id.* (citing 5 ILCS 70/1.05). *See also Fayfar v. CF Mgmt.-IL, LLC*, No. 12 C 3013, 2012 WL 6062663 (N.D. Ill. Nov. 4, 2012).

On their side, the plaintiffs argue that corporations can be directly liable under the IGVA under *dicta* in *Flood v. Washington Square Restaurant, Inc.*, No. 12 C 5729, 2012 WL 6680345 (N.D. Ill. Dec. 21, 2012). In that case, another District Court of the Northern District of Illinois, noted the Illinois Statute on Statutes' presumption that the term "person" refers to corporate entities, but ultimately concluded that the presumption was overcome by the IGVA's use of the term "personally." *Id.* at *2-3. It stated, "[T]he court cannot conceive of how a corporation could 'personally' perpetrate an act of gender-related violence. Corporations act only through their agents, so it is impossible for a corporation to 'personally' do anything." *Id.* at *3. The plaintiffs dispute *Flood*'s conclusion that corporations cannot "personally" encourage or assist gender-related violence and assert that the H Group has done just that by failing to have policies and procedures to address peer harassment and to reduce the risk of assault. The plaintiffs also cite *Cruz v. Primary Staffing, Inc.*, No. 10 C 5653, 2011 WL 1042629 (N.D. Ill. 2011), and *Smith v. Rosebud Farmstand*, No. 11-cv-9147, 2012 WL 5562769 (N.D. Ill. Nov. 15, 2012). In each of those cases, other District Courts of the Northern District of Illinois found a plaintiff had stated an

11

IGVA claim against a corporation that ignored prior complaints of sexual harassment by an employee and retaliated against the complainants, thereby encouraging or assisting sexual harassment by the employee.  *Cruz*, 2011 WL 1042629, at *1;  *Smith*, 2012 WL 5562769, at *4.

In deciding how to interpret the IGVA, the Court must apply the law as it believes the highest court of the state would apply it if it were hearing the issue.  *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 669 (7th Cir. 2001).  When the highest state court has not spoken on an issue, the federal court must give great weight to decisions of intermediate appellate courts unless there are persuasive reasons to believe the highest court would rule differently.  *Id.*  Here, the Illinois Supreme Court has not interpreted IGVA.  The three Illinois Appellate Courts to consider cases against corporate defendants have not squarely addressed the statutory interpretation question.  In *Watkins v. Steiner*, Nos. 5-11-0421, 5-11-0422, 5-11-0423, 5-11-0424, 5-11-0442, 5-11-0443, 2013 WL 166737 (Ill. App. Ct. Jan. 14, 2013) (unpublished), the Appellate Court assumed without rigorous statutory interpretation that a municipality could be liable under the IGVA but ultimately held that the allegations did not support personal encouragement or assistance.  *Id.* at *3.  Another Illinois Appellate Court avoided the issue of defining "person" by holding that, even if the corporate defendant were a "person," the allegations did not support the "personal assistance" element.  *Doe v. Psi Upsilon Int'l*, 963 N.E.2d 327, 331 (Ill. App. Ct. 2011). In the third Illinois Appellate Court case, the corporate defendant did not advance the argument that it was not a "person," and the Appellate Court disposed of the case on the grounds that the IGVA was not retroactive to the conduct alleged.  *Doe v. University of Chi.*, 939 N.E.2d 76, 77 (Ill. App. Ct. 2010).  In light of this scant guidance, this Court must predict how the Illinois Supreme Court would decide the issue.

The Illinois Supreme Court would surely observe traditional statutory interpretation principles as set forth in Illinois law, that is, it would try to ascertain and give effect to the intent of

12

the legislature. *Ready v. United/Goedecke Servs. Inc.*, 905 N.E.2d 725, 729 (Ill. 2008). The statute's language is the best indicator of the legislature's intent, and it must be given its plain and ordinary meaning. *Id.* If the language is ambiguous, the Court should pick the interpretation that does not produce absurd, unjust, unreasonable or inconvenient results. *Solon v. Midwest Med. Records Ass'n*, 925 N.E.2d 1113, 1116 (Ill. 2010). The language of a statute must be read in its statutory context, *People v. Beachem,* 890 N.E.2d 515, 519 (Ill. 2008), and in a way that does not render any terms meaningless surplusage, *People v. Frieberg*, 589 N.E.2d 508 (Ill. 1992).

Here, the Court is persuaded by the statutory interpretation as explained by the courts finding the IGVA does not apply to corporations. Those cases consider the term "person" in the context of the statute as a whole, including the use in the same statute of the term "personally," and come to the conclusion that a corporate entity cannot do anything "personally" because it can only act through its agents. It would be absurd to hold a corporation is a "person" under the IGVA if it could never commit acts that would constitute a violation of the act. Furthermore, a contrary conclusion would render the term "personally" as it modifies "encouraging or assisting" meaningless surplusage. To find that a corporation can be liable where it encourages or assists gender-related violence eliminates the meaning of the term "personally" to describe the encouragement or assistance. Principals of statutory construction weigh against such an interpretation. *Cruz* and *Smith* are not persuasive otherwise. Neither attempted the statutory interpretation task as directed by the Illinois Supreme Court; all the courts finding no liability for corporations under the IGVA did. For this reason, the Court finds the H Group is not directly subject to liability under the IGVA.

The plaintiffs also urge the Court not to dismiss their IGVA claim against the H Group because it may be vicariously liable for Sobeck's and Broskie's acts of encouraging or assisting L.T.'s gender-related violence. The H Group's reply brief addresses this contention in a single

footnote that reiterates its theory that a corporation cannot be directly liable under the IGVA. This cursory argument is insufficient to persuade the Court that a corporation cannot be vicariously liable for its employees' IGVA violations committed within the scope of their employment. Nevertheless, for the reasons explained in the following section, the Court finds the plaintiffs have failed to adequately plead an IGVA claim against Sobeck or Broskie. Therefore, their derivative claim against the H Group fails as well.

For the foregoing reasons, the Court finds the plaintiffs have not pled an IGVA claim and will dismiss that claim.

        2.      <u>Sobeck and Broskie</u>

As for the individual defendants Sobeck and Broskie, who are clearly subject to the IGVA as individuals, they argue that the plaintiffs have not pled facts plausibly suggesting they violated the IGVA. The plaintiffs admit Sobeck and Broskie did not "personally commit[] the gender-related violence," but they maintain Sobeck and Broskie "personally encourage[ed] or assist[ed] the act or acts of gender-related violence" committed by L.T.[3]

No Illinois court has defined exactly what "personally encouraging or assisting" entails. However, one Illinois Appellate Court has found that a township's failure to supervise a township supervisor who committed gender-related violence and fellow employees' failure to act to stop the gender-related violence when they knew the township supervisor was committing it did not qualify as "personally encouraging or assisting." *See Watkins v. Steiner*, Nos. 5-11-0421, 5-11-0422, 5-11-0423, 5-11-0424, 5-11-0442, 5-11-0443, 2013 WL 166737, *3-4 (Ill. App. Ct. Jan. 14, 2013)

---

[3] The H Group also raises this argument in its reply brief. However, arguments in support of the motion that are raised for the first time in a reply brief are waived. *Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998). This is because the opposing party does not have an opportunity to respond to the new arguments in the reply brief. *See Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 668 (7th Cir. 1998). Thus, the H Group has waived the argument that the plaintiffs have not adequately pled that it personally encouraged or assisted gender-related violence.

(unpublished). Another Illinois Appellate Court has found that a national college fraternity whose local chapter held a party, served alcohol to the plaintiff such that she became drunk, and failed to warn her of or protect her from sexual assault did not "personally encourage or assist" one partygoer's post-party gender-related violence against the plaintiff. *See Doe v. Psi Upsilon Int'l*, 963 N.E.2d 327, 331 (Ill. App. Ct. 2011).

The plaintiffs point to *Stanfield v. Cook County*, No. 10 C 6569, 2011 WL 3876955, *2 (N.D. Ill. Sept. 1, 2011), in which a District Court of the Northern District of Illinois held that "'encouragement or assistance' includes a supervisor who allegedly knows that an employee is committing repeated acts of gender-related violence and not only turns a blind eye to those actions but also promotes that employee." They also cite *Cruz v. Primary Staffing, Inc.*, No. 10 C 5653, 2011 WL 1042629 (N.D. Ill. 2011), and *Smith v. Rosebud Farmstand*, No. 11-cv-9147, 2012 WL 5562769 (N.D. Ill. Nov. 15, 2012). Both of these cases found a defendant had "encouraged or assisted" an employee's gender-related violence by ignoring sexual harassment complaints by the victim and instead retaliating against her. *Cruz*, 2011 WL 1042629, at *1; *Smith*, 2012 WL 5562769, at *4.

In its analysis, the Court turns first to the plain meaning of the words in the IGVA. According to the Merriam-Webster Dictionary Online, "encourage" means "to inspire with courage, spirit, or hope," "to attempt to persuade," "to spur on," or "to give help or patronage to," available at http://www.merriam-webster.com/dictionary/encourage, and "assist" includes "to give support or aid," available at http://www.merriam-webster.com/dictionary/assist. Each of these implies a conscious, active role, not merely a failure to act or tolerance of a situation. This is consistent with *Watkins* and *Psi Upsilon*, which found a defendant's failure to act against a possible harm was not encouragement or assistance. It is also consistent with *Stanfield, Cruz* and *Smith*, in which a defendant was found to have encouraged or assisted gender-related violence

15

when it promoted the sexual harassment perpetrator or retaliated against the victim.

The Court would be hard-pressed to find the allegations suggest Sobeck or Broskie "personally encouraged or assisted" L.T.'s gender-related violence against Doe. The allegations establish that, prior to any gender-related violence by L.T. against Doe, Sobeck and Broskie refused to separate L.T. from Doe or otherwise implement any special measures to protect Doe, but they did continue to watch L.T. and Doe closely. No allegations suggest this was because they were hoping or even expecting that L.T. would assault Doe. In addition, Sobeck talked to L.T. about personal boundaries and asked him not to have any non-work-related interactions with Doe. There is no allegation that Sobeck or Broskie knew at the time about Doe's first encounter with L.T. in the bathroom on May 13, 2010, the day before she was raped. These allegations simply do not plausibly suggest Sobeck or Broskie encouraged L.T.'s actions. They certainly did not inspire him with courage by, for example, giving him a pep talk before meeting with Doe. They did not attempt to persuade him that raping Doe would be a good idea, and they did not spur him on to his violence. And while their failure to better protect Doe made it possible for L.T. to rape her, they did not consciously help, support or aid him in his conduct. On the contrary, they tried to prevent harm by closely watching L.T. and Doe and by asking L.T. to keep away from Doe. At the most, like the defendants in *Watkins* and *Psi Upsilon*, they knew of a foreseeable risk and did not prevent it. This is not enough to state a claim under the IGVA. The Court must dismiss the plaintiffs' IGVA claims against Sobeck and Broskie.

C.   Pleading Requirements

Finally, the defendants ask the Court to dismiss the complaint in its entirety because the plaintiffs have incorporated allegations relating to the Rehabilitation Act and IGVA claims (which the defendants presume will be dismissed) into their other claims and because the plaintiffs failed to satisfy the pleading requirements of Rule 8(d)(1), which requires each allegation in a complaint

16

to be "simple, concise, and direct."

The defendants have cited no authority for dismissing claims because they include allegations pled in other dismissed counts.  The Court is not persuaded that dismissal for this reason is appropriate.

As for compliance with Rule 8(d)(1), the Court agrees with the defendants that the complaint is not a model of "simple, concise, and direct" allegations.  Nevertheless, the Court believes the causes of action are sufficiently straightforward, the terminology used is sufficiently clear, and the allegations are sufficiently simple, concise and direct to alert the defendants to the claims against them and to allow a meaningful response without undue effort.  Requiring the plaintiffs to replead the allegations in smaller chunks would only serve to prolong this litigation for a purely technical reason.

### IV. Conclusion

For the foregoing reasons, the Court**:**

- **GRANTS in part** and **DENIES in part** the defendants' motion to dismiss (Doc. 15);
- **DISMISSES** Count III (under the IGVA) **with prejudice**; and
- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED: April 18, 2013**

                                      s/J. Phil Gilbert
                                      **J. PHIL GILBERT**
                                      **DISTRICT JUDGE**